[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This Memorandum is in reply to two questions posed by the Superior Court (Axelrod, J.) to the Magistrate court based on Judge Axelrod's review of the appeal on Magistrate Matasavage's decision of February 24, 2000.
HISTORY: The Commissioner of Social Services, on behalf of the petitioner, Maria McDougal, brought a motion for modification in mid 1995. Petitioner appeared pro se (The Attorney General brought the motion for modification), respondent appeared with counsel. The child was represented by counsel in this motion for modification of the child support order.
This matter has a very long history in court. It began with a petition for paternity proceedings dated June 13, 1988. After motions and the first set of several continuances, a stipulation entered dated May 21, 1991. As part of this stipulation, mother and father agreed to a lump sum of $27,500.00 to be paid to mother by the father. The money was paid and the parents signed a document entitled "IRREVOCABLE TRUST FOR MINOR." Contained in this document is the following pertinent language, "The Trustee (petitioner), monthly, may distribute to or for the benefit of Tanja Marie McDougall, (hereinafter referred to as the "beneficiary") so much or all of the net income of the Trust estate as the Trustee shall deem advisable in the exercise of their sole discretion . . ." In paragraph 3 it states further, "The Trustee may distribute . . . so much or all of the Trust Estate as may be necessary for the care, support . . . of the Beneficiary." This agreement further states, "Trustee shall endeavor in the exercise of her discretion, however, to attempt to refrain from distribution of principal, if the Trustee/Declarant herself has sufficient assets or income to adequately care for the support . . ." (Italics added by this writer.) The document goes on to state that ". . . the Trustee shall not distribute more than $17,500.00 of the principal and shall always keep at least the principal sum of $10,000.00 in the CT Page 1780 corpus of said trust." The agreement goes on to state that "It is contemplated that the Trustee/Declarant may disburse up to $17,500.00 of the principal immediately to reimburse herself (the caretaker) for past, present or future expenses which directly or indirectly benefit the child." The court finds that this agreement was couched in terms of a trust agreement but it was an actually an agreement that the mother do the best she can and try not to spend all the money. This court must comment that Guille v. Guille, 196 Conn. 260 (1985), was law at the time of this decision and was seemingly ignored. The "beneficiary" had no counsel.
Dated the same date of May 21, 1991 is a document entitled, "AMENDMENT TO STIPULATION." This document states in paragraph 2 that "in the event of a subsequent proceeding against the defendant (father) for support . . ., the defendant shall receive credit for all sums paid hereunder, as well as the interest earned (bold added for emphasis) on said sums in trust . . ."
Paragraph 3. "Plaintiff agrees to be fully, solely and completely responsible for any and all parental or legal support for the minor child, past, present and future."
This court finds this language to be in seeming contradiction to paragraph 2, which allows defendant "credit" for the lump sum paid against any future child support, paragraph 4 states, "plaintiff agrees to indemnify, save and hold harmless the defendant from any further claims . . . for support brought against defendant on behalf of minor child byany third party (bold print added for emphasis)." Judgment was entered.
On July 30, 1991, the first contempt motion was brought against respondent.
On January 11, 1993, petitioner moved for weekly payments. Nothing further was done on this motion.
On August 31, 1995, Assistant Attorney General J. Bernard Davis brought a "Motion to Modify."
On September 28, 1995 Attorney Michael Conway was appointed to represent the minor child.
Three additional continuances are next listed in the court file.
On January 25, 1996, the court (Forman, FSM) ordered "Any orders will be retroactive until November 30, 1995." CT Page 1781
On February 29, 1996 the court orders a final continuance over to April 4, 1996. Despite the language of "final continuance," the matter is continued three further times.
Listed continuances continue to be granted: Continuances until March 6, 1997 and March 24, 1997. Continued to August 21, 1997 and to September 15, 1997. Continued to October 16, 1997. Continued again to December 4, 1997. Continued by agreement to May 14, 1998. Continued again to June 25, 1998 for status conference. Continued to July 23, 1998. Continued to October 15, 1998. Continued to January 14, 1999. Continued to March 18, 1999. Continued to May 13, 1999. Continued to June 17, 1999. Continued to July 22, 1999. Continued to August 12, 1999. Continued to September 30, 1999. No parties appeared on September 30, 1999. Hearing rescheduled for October 14, 1999. Continued for October 21, 1999. Continued to December 3 and December 10, 1999.
Evidence was taken by Magistrate Matasavage and a decision was rendered on January 24, 2000. The Matasavage court found that there was a "substantial change in circumstances" since the date of the judgment. The court found that the lump sum was depleted by May 1, 1995.
The court (Matasavage) ordered respondent to pay $98.00 a week in current support. The Matasavage court found that there was to be a credit given to respondent for the lump sum and the court concluded that there is no arrearage prior to June 1998.
THIS COURT'S FINDING: Based on this court's reading of the decision of Magistrate Matasavage of January 24, 2000, the testimony of the parties and review of the transcripts of Matasavage's hearings, this court finds that the $27,500.00 lump sum was exhausted and completely depleted in the period of time from May 21, 1991 to May 21, 1995 and that Magistrate Matasavage found that there would be no arrearage up to June 1998. In making this finding, Magistrate Matasavage took into account that the respondent was unemployed and underemployed and used the child support guideline concept (current at that time) of the "self-support reserve." Magistrate Matasavage further found the arrearage to be $6,174.00 as of February 22, 2000. There have been an additional 154 weeks since February 22, 2000 until February 6, 2003. Respondent was further ordered to pay $17.00 per week on the arrearage due the petitioner. 154 weeks times $98.00 and $17.00 equals an additional $17,640.00 in arrearage. The total arrearage is found to be the sum of those two amounts: $23,814 (Twenty-three thousand eight hundred fourteen dollars and no cents).
FINDING ON QUESTION ONE: The lump sum earned $1571.00 in interest based CT Page 1782 on this court's calculations. These calculations were made in an attempt to be fair to both sides and based on the paucity of actual information available. The court further finds that all interest earned was depleted by May 21, 1995.
PROCEEDTNGS USED TO DETERMINE THE INTEREST EARNED:
In order to finalize the total amount of the arrearage due to petitioner, this court must answer the question posed concerning "interest earned."
Testimony was taken from petitioner and found to be credible that $2,500.00 of the $27,500.00 was taken for attorneys fees by petitioner's then counsel. This left petitioner with $25,000.00. Language in the "trust agreement" indicates that petitioner was being paid the sum retroactive to 1988 for "past expenses."
On September 12, 2002 and November 14, 2002, a full hearing was held by this court on the issues framed by the reviewing court (Axelrod, J.).
FACTS: In 1991, respondent admitted to paternity of the child born to petitioner. An agreement was entered into by the parents and was accepted by the court and made an order of the court. When this agreement was made, the child did not have representation in derogation of Guille v.Guille, 196 Conn. 260 (1985). This agreement had the father admit paternity and the mother accept a $27,500.00 lump sum. (Copy attached.)1* This agreement called the lump sum "an irrevocable trust" and made the mother the "trustee." There was no further action until the mother-petitioner applied for state assistance. The Commissioner of Social Services through the Attorney General brought an action to modify the child support order.
We are now in the second month of 2003 and this case has not yet been finally adjudicated. The task before this court is to respond to the two questions raised by the reviewing court (Superior Court Judge Sidney Axelrod).
The first of two questions posed by Judge Axelrod on May 8, 2001 are as follows:
 1. Memorandum of decision does not address what amount, if any, credit the defendant is entitled to receive from the initial $27,500 support payment that he made and how that credit is calculated
The second question posed is as follows: "Further, the memorandum of CT Page 1783 decision does not address what the amount of support would have been either on an annual basis or some other basis due from the defendant to the plaintiff from the retroactive date of November 30, 1995 to the date of the memorandum of decision." (February 24, 2000)
REVIEW OF THE FILE: The file next reveals a Motion to articulate, amplify reopen and modify or set aside: (#155)
 Motion 155 was held over for July 2, 2001 by order of Judge Axelrod. On that date, the reviewing court (Axelrod, J.) accepted the agreement of the parties and made it an order.
 The agreement of the parties (approved and ordered by Judge Axelrod) stated that the decision of May 8, 2001 by Judge Axelrod did not sustain or deny the appeal from the Magistrate's decision of 2/24/00, nor has the court decided the major issues of said appeal including the issue of whether there should be any support at all
Next in the file is #157, entitled "Requested Articulation," dated August 10, 2001 by the court (Bentivegna, Family Support Magistrate).
Magistrate Bentivegna articulated the decision of Magistrate Matasavage from February 24, 2000. Subsequent to #157, Motion #158 by Attorney Kolesnik. In response to #157, on September 24, 2001, Judge Axelrod ordered that the attorneys draft a remand for Judge Axelrod's signature.
On September 28, 2001, #159 entitled "Order of Court on the motion to set aside, reopen, vacate and or modify the requested articulation dated August 14, 2001."
This order asked two questions:
 1. What amount of money would the $27,5000.00 corpus have earned if invested since the trust was created; what credit if any, should the defendant receive therefore and how is it calculated.
 2. What the amount of support would have been either on an annual basis or some other basis due from the defendant to the plaintiff from the retroactive date of November 30, 1995 to the date of the Memorandum of Decision.
Based on the two questions above, this court took testimony and argument as stated above.
This court reviewed the decision of (then) Magistrate Matasavage, the CT Page 1784 articulation by (then) Magistrate Bentivegna, reviewed the transcripts of the prior hearings and the entire file. Based on this review the court will answer the two questions put forward.
QUESTION 1. The following quoted language is the first part of question 1. "What amount of money would the $27,500.00 trust corpus have earned if invested since the trust was created."
The court finds that the amount of money that actually went into the possession of the petitioner McDougal is $25,000.00. This initial amount is found based on credible testimony by petitioner that her attorney took a fee of $2,500.00 when the paternity was found and the "child support" was agreed upon by the mother and father. The court finds that the parties contemplated that the lump sum payment included payments back to March 29, 1988 when the child was born and supported solely by petitioner.
The court finds that the petitioner was found to be eligible for state aid by the Connecticut Department of Social Services (hereinafter referred to as "DSS") on or about May 1, 1995. Magistrate Matasavage found that on or about that date of May 1, 1995, the entire trust proceeds were depleted. All interest earned was earned between May 1991 and May 1995, therefore, all monies were completely depleted by May 1995.
The petitioner received her $25,000.00 payment on or about May 21, 1991 and had exhausted the entire amount by May 1, 1995. That period of time is two-hundred five weeks. Testimony was taken on November 14th that from time to time the petitioner had the money in a savings account.
Parenthetically, counsel for respondent offered to have a financial advisor testify as to what the interest would have earned if treated as atrust (italics added for emphasis). This court denied counsel the opportunity to have such testimony taken, finding that such testimony was irrelevant in that it was unnecessary. The court decided this based on the fact that no one could know what amount of money was in the petitioner's possession from week to week or month to month. What could have been earned is a hypothetical question that does not relate to the fact that the petitioner had daily, weekly and monthly expenses in addition to emergency or at least, unscheduled, costs as well. Further, this court finds (later explained in this writing) that a large amount of this money was expended by the petitioner prior to the date the $27,500.00 was paid over.
Giving credibility to the portion of the mother's testimony concerning CT Page 1785 "interest earned," the court finds that a reasonable person would have put the money in an interest-bearing savings account. This is found to be a reasonable approach due to the finding that this money was needed for all matters related to support of the child. The testimony of the petitioner concerning interest earned was sketchy and incomplete. The court accepts the petitioner's testimony of a fire that destroyed her records. Using the entire period of time that the money was used for (retroactive to child's date of birth of March 29, 1988 to May 21, 1995 when the mother ran out of money), this court finds that the average weekly amount of support is $67.39 (371 weeks from March 29, 1998 to May 21, 1995 divided into the amount of $25,000.00 paid over to mother). When the money was received on or about May 21, 1991, 163 weeks had passed. 163 times $67.39 equals $10,985.00. This amount is found to have been spent or owed by the petitioner on the date of disbursement and not available for "investing." That leaves an amount of $14,015 available on the date of disbursement to the petitioner. For the first year (May 21, 1991 to May 21, 1992), using simple interest, there would be $14,015 available at 4% interest. The interested earned would be $561.00. Adding $561 to the principal and subtracting 52 weeks payout at $67.39 leaves a new principal of $11,072 as of May 21, 1992. For the second year, interest of $442 and payments of $3,504 leave $8,460.00 as of May 21, 1993. For the third year May 21, 1993 to May 21, 1994, the interest would have been $338. Adding this sum and subtracting $3,054 leaves $5,744.00 as of May 21, 1994. This court has found that the petitioner ran out of money by May 21, 1995. The petitioner testified credibly concerning a fire and moving expenses. The sum of $5,744 would have earned $230.00 in interest. As of May 21, 1995, petitioner had spent all the money.
Total interest earned is found to have been $1,571.00 assuming no interruptions in the petitioner's savings and simple interest of 4%.
It is found that all this money; the "lump sum" paid and the "interest earned" was exhausted by May 21, 1995.
It is found that there was no arrearage due up to June 1998. See decision of Magistrate (now Judge) Matasavage.
On September 19, 2002, the parties were present with counsel. The child was present with counsel as well. No testimony was taken. Respondent's counsel offered to put an "expert witness" on the stand to give testimony concerning interest that would have been earned. The court evaluated the offer of proof from counsel and ruled that under the circumstances the testimony would be irrelevant. The "lump sum" of $27,500.00 was not to be held for a future date, but used for child support. On November 14, CT Page 1786 2002, the court took testimony from the petitioner concerning any interest she has earned on this account over the time of her control of the money.
The court finds that $1,571.00 is the amount of interest earned. Added to the original lump sum of $27,500.00 creates a grand total of $29,071.00.
The court finds that this sum of $29,071.00 is the credit granted to respondent. This credit applies to the period from the date of birth of the child to May 21, 1995 (the date petitioner was out of money and applied for state aid). Former Magistrate Forman had ruled that the modification would run from November 30, 1995 forward. Therefore, there is no credit to respondent from November 30, 1995 forward. Any credit was consumed during the period preceding November 30, 1995.
FINDING 2.
This court was ordered to find the "arrearage" amount from December 1, 1995 until today's date. In a careful review of the testimony given to (then) Magistrate Matasavage, a review of (then) Magistrate Bentivegna's articulation, and the testimony of respondent, this court makes the following findings:
For the periods involved, the weekly orders are $98.00 a week in current support and $17.00 a week towards the arrearage. These findings are based on the earning capacity of the respondent for the periods delineated.
Testimony was taken from respondent. Respondent was graduated from college in 1987. Respondent could not supply tax returns for the years 2001, 2000 and 1999. Counsel for respondent stated that respondent would have to "Take the fifth amendment." Based on the uncontroverted fact that respondent has possessed a "bachelor's degree" since 1987, has held jobs from time to time that paid $800 to $900 a week, the court finds the earning capacity that Magistrate Matasavage did. Respondent is found to have an earning capacity of $17.00 an hour. The respondent has held jobs earning $588 a week, $800 to $900 a week. Respondent's testimony concerning his current employment and earnings is found to be incredible.
$17.00 an hour calculated by the court using the FIN PLAN computer program using the wage information from petitioner's financial affidavit produces a guideline amount of $99.00. This court finds that the Matasavage calculation of $98.00 is proper and will stand. CT Page 1787
 FINDING ONE: This court finds the Interest earned to be $1571.00. All interest and principal are found to be exhausted prior to 1995.
 FINDING TWO: The earning capacity is found to be $17.00 an hour based on prior earnings of respondent and his college degree. The arrearage as of this date is found to be $23,814.00.
Respondent was found in contempt by this court and incarceration was stayed until February 6, 2003 for payment of a $5,000.00 purge. If that purge is paid, this case is continued until February 27th, 2003 for monitoring. If the purge is not paid, a new purge review date will be set.
So ordered.
McCarthy, FSM